UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SIMON J. COOPER,<br>  *Plaintiff*,<br><br>  v.<br><br>INTERNATIONAL BUSINESS MACHINES CORPORATION,<br>  *Defendant.* | No. 3:24-cv-656 (VAB) |

**RULING AND ORDER ON DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT**

Simon J. Cooper ("Mr. Cooper" or "Plaintiff") filed this Amended Complaint *pro se* against International Business Machines Corporation ("IBM", "IBM U.S.", or "Defendant") under the Employee Retirement Income Security Act of 1974 ("ERISA") for wrongful denial of benefits, penalties, and a breach of fiduciary duties (Count I), and under the European Union General Data Protection Regulations ("GDPR") for breach of privacy (Count II). Amended Complaint, ECF No. 33 (June 3, 2024) ("Amd. Compl.").

Mr. Cooper filed a motion for summary judgment on all counts of his Amended Complaint. Mot. for Summ. J., ECF No. 34 (June 12, 2024).

IBM has filed a motion to dismiss all counts of Mr. Cooper's Amended Complaint. Mot. to Dismiss the Amd. Compl., ECF No. 36 (June 17, 2024) ("Mot.").

For the following reasons, the motion to dismiss is **GRANTED**, and this case is **dismissed with prejudice.**

Accordingly, Mr. Cooper's motion for summary judgment is **DENIED as moot**.

I.      FACTUAL AND PROCEDURAL BACKGROUND

    A. Factual Allegations

Mr. Cooper was originally employed by IBM U.K. in 1984, a United Kingdom subsidiary of IBM U.S. Amd. Compl. ¶¶ 3, 6. During this time, Mr. Cooper participated in IBM U.K.'s retirement plan. *Id.* ¶ 9.

In 1997, IBM U.S. transferred Mr. Cooper from IBM U.K. to IBM U.S., which required him to resign from IBM U.K. to join IBM U.S.; and, separately, credit was given Plaintiff for time and benefits accrued previously. *Id.*

On May 21, 2020, Mr. Cooper was allegedly notified by IBM in writing that his employment would be terminated in thirty days. If Mr. Cooper did not find another job within IBM U.S. in thirty days, as he was retirement eligible, he had the ability to submit to IBM U.S. his notice of retirement and claim for pension benefits. *Id.* ¶¶ 12, 13.

On June 30, 2020, the day after Mr. Cooper's thirty-day termination advisement, the Mr. Cooper allegedly submitted to IBM U.S. the requisite paperwork to transfer all IBM U.S. pensionable assets (PPA and 401(k)) to a self-directed Independent Retirement Account. This set the "Benefit Commencement Date" ("BCD") to be June 30, 2020. *Id.* ¶¶ 16, 17.

On August 14, 2020, which was six weeks after the BCD, which was the timeframe IBM U.S. allegedly said it needed to calculate Plaintiff's pension benefits, IBM U.S. allegedly had not yet commenced calculating Plaintiff's pension benefits. *Id.* ¶ 16.

2

IBM allegedly applied its conversion of the defined benefit plan to a cash plan retroactively to its employees, including Mr. Cooper. The final version of the plan was known as the Personal Pension Plan ("PPP") and the individual account was known as the Personal Pension Account (hereinafter "PPA."). *Id.* ¶¶ 28, 29.

IBM has allegedly repeatedly claimed that the IBM U.S. pension is subject to a Foreign Service Offset ("FSO") because Mr. Cooper's service included employment by IBM in the U.K. Alternatively, Defendant has allegedly repeatedly stated that the U.S. Only Service is calculated to provide a second pension valuation, of which the higher value would be paid. Despite multiple requests, IBM has allegedly not made this valuation. *Id.* ¶¶ 32, 33.

Despite IBM U.S.'s many alleged representations to Mr. Cooper, in writing, that IBM U.S. would qualify and quantify this FSO, to date, IBM has allegedly not provided Mr. Cooper with any such information, despite Mr. Cooper's many alleged previous requests and IBM's alleged most recent written commitment to do so on September 25, 2020. Furthermore, the IBM has allegedly refused to specify what information is required to quantify the FSO. *Id.* ¶ 34.

Between 1999 and 2020, IBM U.S. allegedly had every opportunity to audit, identify and correct any PPA statements impacted by its FSO assumption, and its requirement to calculate any FSO and/or U.S. Only Service Benefit. To date, the IBM has allegedly been either unwilling or unable to explain the methodology behind its initial balance of the PPA calculation, and the vast differences in pay scales between IBM U.K. and IBM U.S. *Id.* ¶¶ 39, 40.

IBM's documents provide a timeline for payment of pension benefits to its employees in the U.S., stating generally that payments are made four to six weeks after an employee's separation date, with the proviso that it may take ninety days for calculations that require manual processing. A preliminary copy of the timetable was allegedly provided to Mr. Cooper on or

about June 23, 2020. Such timetable should have been completed by September 30, 2020, ninety days after the BCD. *Id.* ¶¶ 52–54.

In alleged violation of the PPA and ERISA, to date, IBM has allegedly failed to pay to Mr. Cooper the pension to which he is entitled. Despite due demand, IBM has allegedly failed, neglected and refused to pay this pension to Mr. Cooper, which IBM U.S. was allegedly required to pay to Mr. Cooper under the PPP policy and ERISA in a timely manner—not to have exceeded ninety days from the BCD. *Id.* ¶¶ 56, 57.

After his termination, Mr. Cooper allegedly repeatedly advised IBM U.S., that he had no IBM U.K. pension, even though that information is private data and protected under U.K. and European privacy legislation, and IBM U.S.'s own data privacy policy. Mr. Cooper allegedly further advised the Defendant through its call center that he did not authorize any sharing of private data between IBM U.K. and IBM U.S. and, conversely IBM U.S. and IBM U.K. *Id.* ¶¶ 43, 44.

On July 16, 2020, IBM U.S. allegedly communicated with the IBM U.K. Pension Department, in writing, to request Plaintiff's pension information from IBM U.K. Allegedly included in that request was a copy of Mr. Cooper's personal information, which IBM U.S. allegedly knew, or should have known, was allegedly illegal to share with IBM U.K. under the GDPR, IBM U.S.'s internal policies, and European legislation. Furthermore, IBM's communications to IBM U.K. allegedly fraudulently implied that Mr. Cooper had already given permission to IBM U.K. to release his personal data to IBM U.S. *Id.* ¶¶ 45, 46.

IBM allegedly ignores its data privacy violations. IBM allegedly has not denied a claim, which would allegedly begin the ERISA timeline. IBM has allegedly refused to provide an accurate pension benefit statement by failing to provide a detailed statement based on the U.S.

4

Only employment timeline, despite its many commitments to do so, fundamentally breaching its fiduciary requirements under ERISA for timely and accurate reporting. *Id.* ¶¶ 60, 61.

### B. Procedural History

On March 14, 2024, Mr. Cooper filed a Complaint against IBM in the Superior Court for the District of Danbury, Danbury, Connecticut. *Simon J. Cooper v. International Business Machines Corporation*, Docket No. DBD-CV24-6049387-S; *see* Not. Of Removal, ECF No. 1 ¶ 1.

On April 9, 2024, IBM filed a notice of removal from the Superior Court for the District of Danbury, Danbury, Connecticut. Not. Of Removal, ECF No. 1

On May 16, 2024, IBM filed a motion to dismiss the Complaint. Mot. to Dismiss Compl, ECF No. 27.

On May 29, 2024, Mr. Cooper filed a response to IBM's motion to dismiss the Complaint. Response to Mot. to Dismiss Compl., ECF No. 31.

On June 3, 2024, Mr. Cooper filed an Amended Complaint. Amd. Compl.

On June 12, 2024, Mr. Cooper filed a motion for summary judgment. Mot. for Summ. J., ECF No. 34.

On June 13, 2024, the Court denied as moot IBM's motion to dismiss. Order, ECF No. 35.

On June 17, 2024, IBM filed a second motion to dismiss. Mot.

On June 28, 2024, Mr. Cooper filed a response to IBM's second motion to dismiss. Response to Mot. to Dismiss, ECF No. 38. ("Response")

On July 3, 2024, IBM filed a memorandum in opposition to Mr. Cooper's motion for summary judgment. Mem. in Opp'n, ECF No. 39

On July 10, 2024, Mr. Cooper filed a response to IBM's memorandum in opposition to Mr. Cooper's motion for summary judgment. Response to Mem. in Opp'n, ECF No. 40.

On July 12, 2024, IBM filed a memorandum in support of their motion to dismiss and in reply to Mr. Cooper's opposition. Mem. in Support, ECF No. 41.

On that same day, Mr. Cooper filed a motion to compel discovery under Rule 26(a). Mot. to Compel, ECF No. 42.

On July 15, 2024, the Court denied Mr. Cooper's motion to compel pending the resolution of the motion to dismiss. Order, ECF No. 43.

On that same day, Mr. Cooper filed a memorandum in opposition to IBM's motion to dismiss. Mem. in Opp'n, ECF No. 44.

On July 18, 2024, IBM filed a motion to stay discovery. Mot. to Stay Discovery, ECF No. 45.

On October 7, 2024, the Court granted in part IBM's motion to stay. Order, ECF No. 49.

## II. STANDARD OF REVIEW

### A. Rule 12(b)(6)

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Any claim that fails "to state a claim upon which relief can be granted" will be dismissed. Fed. R. Civ. P. 12(b)(6). In reviewing a complaint under Rule 12(b)(6), a court applies a "plausibility standard" guided by "[t]wo working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need

detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (alteration in original) (citations omitted)). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Thus, the complaint must contain "factual amplification . . . to render a claim plausible." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009)).

When reviewing a complaint under Federal Rule of Civil Procedure 12(b)(6), the court takes all factual allegations in the complaint as true. *Iqbal*, 556 U.S. at 678. The court also views the allegations in the light most favorable to the plaintiff and draws all inferences in the plaintiff's favor. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013); *see also York v. Ass'n of the Bar of N.Y.C.*, 286 F.3d 122, 125 (2d Cir. 2002) ("On a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true.").

A court considering a motion to dismiss under Rule 12(b)(6) generally limits its review "to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). A court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

## III.   DISCUSSION

In their motion to dismiss, IBM argues that all counts of Mr. Cooper's Amended Complaint should be dismissed because (1) Mr. Cooper's ERISA claims fail to state a claim, and (2) Mr. Cooper's GDPR claims are inapplicable, and the Court does not have jurisdiction over such a claim. Mot. at 1.

The Court will address each count in turn.

### A.   Count One: ERISA Claims.

IBM argues that Mr. Cooper has failed to state a claim under ERISA because (1) all of Mr. Cooper's ERISA claims are time-barred and (2) Mr. Cooper failed to exhaust his administrative remedies. Mot. at 11–16.

Mr. Cooper argues in response that (1) the statute of limitations has been tolled because of IBM's fraud and their refusal to respond and administer Mr. Cooper's demand for timely payment of his pension, and (2) he can demonstrate through discovery that he did seek administrative remedies. Response at 2; Mem. in Opp'n at 2.

The Court disagrees.

#### 1.   The ERISA Statutes of Limitations Period

"[A] statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint." *Ellul v. Congregation of Christian Bros.*, 774 F.3d 791, 798 n.12 (2d Cir. 2014). If a review of the complaint and other permissible documents reveals "that the claims are prima facie time-barred, the burden is on the plaintiff to 'plausibly alleg[e] that they fall within an exception to the applicable statute of limitations.'" *Roeder v. J.P. Morgan Chase & Co.*, 523 F. Supp. 3d 601, 611–12 (S.D.N.Y. 2021) (quoting *Twersky v.*

8

*Yeshiva Univ.*, 993 F. Supp. 2d 429, 436 (S.D.N.Y. 2014)), *aff'd*, *Roeder v. J.P. Morgan Chase & Co.*, No. 21-552, 2022 WL 211702 (2d Cir. Jan. 25, 2022) (summary order).

ERISA provides no statute of limitations for civil enforcement actions other than breach of fiduciary duty claims. ERISA § 413(2), 29 U.S.C. § 1113. The Second Circuit and the Supreme Court has found, however, that the "controlling limitations period [for ERISA claims] is that specified in the most nearly analogous state limitations statute." *Miles v. New York State Teamsters Conf. Pension & Ret. Fund Emp. Pension Ben. Plan*, 698 F.2d 593, 598 (2d Cir. 1983) (citing *Board of Regents v. Tomanio*, 446 U.S. 478, 483–84 (1980)).

For ERISA benefits claims, the limitations period is that set within in the relevant employee benefit plan, "as long as the period is reasonable." *Heimeshoff v. Hartford Life & Accident Ins. Co.*, 571 U.S. 99, 106 (2013). The Supreme Court, the Second Circuit, and courts within the Second Circuit have found that a statute of limitations of at least three years in an ERISA plan is reasonable. *See e.g.*, *id* at 109–116 (holding that a three-year statute of limitations in an ERISA plan was reasonable); *Arkun v. Unum Grp.*, 767 F. A'ppx 51, 52–53 (2d Cir. 2019) (same); *Park Ave. Aesthetic Surgery, P.C. v. Empire Blue Cross Blue Shield*, No. 19-CV-9761 (JGK), 2021 WL 665045, at *7 (S.D.N.Y. Feb. 19, 2021) (holding that a two-year statute of limitations in an ERISA plan was reasonable).

The Second Circuit has held that Connecticut's one-year limitations period for civil forfeiture claims is closely analogous to ERISA's Section 502(c)(1) claims for penalties, such that the one-year limitations period should apply to claims for penalties under ERISA. *See Brown v. Rawlings Fin. Servs., LLC*, 868 F.3d 126, 128 (2d Cir. 2017) (holding that a district court appropriately applied a one-year statute of limitations period on ERISA claims for

penalties because "Connecticut civil forfeiture claims are more closely analogous to Section 502(c)(1) claims").

ERISA enumerates a statute of limitations for breach of fiduciary duty claims as "three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation," 29 U.S.C. § 1113(2), with an "statutory concealment exception": "that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation." 29 U.S.C. § 1113.

As to Mr. Cooper's ERISA payment of benefits claim, IBM's ERISA Plan's Summary Plan Description contains a reasonable two-year statute of limitation period. *See* ECF No. 1-1 at 85 (incorporated by reference in Mr. Cooper's Amended Complaint, ECF No. 33) ("However, you may not file a claim in court . . . unless you file your claim in a court with proper jurisdiction no later than two years after . . .").[1] But Mr. Cooper did not begin suit until March 14, 2024, Petition for Removal, ECF No. 1 ¶ 1 ("On or about, March 14, 2024, an action was commenced against Defendant in the Superior Court for the District of Danbury at Danbury, in the State of Connecticut"), well after the statute of limitations period expired and after his first benefit payment was allegedly due on September 30, 2020. *See* Amended Complaint, ECF No. 33 at ¶ 54. As a result, Mr. Cooper's claim for benefits under ERISA is time-barred.

---

[1] When a document is referenced in a complaint and integral to that complaint, that document can be fairly considered in a motion to dismiss. *See Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 196 (2d Cir. 2005) ("Where a plaintiff has 'reli[ed] on the terms and effect of a document in drafting the complaint,' and that document is thus 'integral to the complaint,' [a court] may consider its contents even if it is not formally incorporated by reference." (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)) (alteration in original)); *see also Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) ("[I]n some cases, a document not expressly incorporated by reference in the complaint is nevertheless 'integral' to the complaint and, accordingly, a fair object of consideration on a motion to dismiss").

As to Mr. Cooper's claim for ERISA penalties, because Mr. Cooper did not bring this lawsuit until March 14, 2024, Petition for Removal, ECF No. 1 ¶ 1 ("On or about, March 14, 2024, an action was commenced against Defendant in the Superior Court for the District of Danbury at Danbury, in the State of Connecticut"), any claims for penalties under ERISA would be well past the one-year statute of limitations period.

As to Mr. Cooper's ERISA breach of fiduciary duty claim, a claim based on not receiving from IBM the data required to calculate the Foreign Service Offset to be applied to his pension valuation within 30 days of his request for the data, Amd. Compl. at 2, Mr. Cooper had to have requested this data by at least by September 25, 2020, *see e.g.*, Amended Complaint ECF No. 33 at ¶¶ 34 (describing communications between IBM and Mr. Cooper about the required Foreign Service Offset data) ("Despite IBM US's many representations to Plaintiff, in writing, that IBM US would qualify and quantify this FSO, to date, Defendant has not provided Plaintiff with any such information, despite Plaintiff's many previous requests and Defendant's most recent written commitment to do so on September 25, 2020."), and Mr. Cooper would have been aware of this potential claim by October 25, 2020. But Mr. Cooper failed to file this lawsuit until March 14, 2024, over three years later, Petition for Removal, ECF No. 1 ¶ 1 ("On or about, March 14, 2024, an action was commenced against Defendant in the Superior Court for the District of Danbury at Danbury, in the State of Connecticut"). As a result, any claim for a breach of fiduciary duty is past the three year statute of limitations period.

While Mr. Cooper argues that the statute of limitations for his ERISA claims should be tolled because of IBM's fraud in not providing him Summary Plan Document data in a timely manner, *see* Amd. Compl. at 2, this tolling argument would only apply to Mr. Cooper's breach of fiduciary claim, not his claim for benefits or penalties. 29 U.S.C. § 1113 ("No action may be

11

commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation . . . except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation."). Other forms of equitable tolling of ERISA claims appear highly disfavored. *See, e.g., Brown v. Owens Corning Inv. Review Comm.*, 622 F.3d 564, 575 (6th Cir.2010) ("We have found only one case where this court has equitably tolled ERISA's statute of limitations."). *Cf. Carey v. Int'l Bhd. of Elec. Workers Local 363 Pension Plan*, 201 F.3d 44, 47 (2d Cir.1999) (explaining that the ERISA statute of limitations provisions requires "strict adherence"). And, even when equitable tolling is allowed, it is only appropriate when the "plaintiff is prevented from filing despite exercising that level of diligence which could reasonably be expected in the circumstances." *Veltri v. Bldg. Serv. 32B-J Pension Fund*, 393 F.3d 318, 322 (2d Cir. 2004). There is no such allegation in this case—as mentioned above Mr. Cooper has been aware of the alleged violation since at least October 25, 2020, and was not prevented from filing suit then.

In addition, a proper allegation of fraud would not "toll" Mr. Cooper's claim but rather make the statute of limitations extend from three years to six years under the statutory concealment exception. *Id.*; *Caputo v. Pfizer, Inc.*, 267 F.3d 181, 189 (2d Cir. 2001) ("the 'fraud or concealment' provision does not 'toll' the otherwise applicable six-or three-year statute of limitations established in § 413(1) or (2); rather, it prescribes a separate statute of limitations of six years from the date of discovery").

Finally, Mr. Cooper has not plausibly alleged fraud. A plaintiff may qualify under the statutory concealment exception "by showing either that the defendant took affirmative steps to prevent the plaintiff's discovery of his claim or injury or that the wrong itself was of such a nature as to be self-concealing." *Caputo*, 267 F.3d at 190 n.3 (citing and quoting *State of New*

commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation . . . except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation."). Other forms of equitable tolling of ERISA claims appear highly disfavored. *See, e.g., Brown v. Owens Corning Inv. Review Comm.*, 622 F.3d 564, 575 (6th Cir.2010) ("We have found only one case where this court has equitably tolled ERISA's statute of limitations."). *Cf. Carey v. Int'l Bhd. of Elec. Workers Local 363 Pension Plan*, 201 F.3d 44, 47 (2d Cir.1999) (explaining that the ERISA statute of limitations provisions requires "strict adherence"). And, even when equitable tolling is allowed, it is only appropriate when the "plaintiff is prevented from filing despite exercising that level of diligence which could reasonably be expected in the circumstances." *Veltri v. Bldg. Serv. 32B-J Pension Fund*, 393 F.3d 318, 322 (2d Cir. 2004). There is no such allegation in this case—as mentioned above Mr. Cooper has been aware of the alleged violation since at least October 25, 2020, and was not prevented from filing suit then.

In addition, a proper allegation of fraud would not "toll" Mr. Cooper's claim but rather make the statute of limitations extend from three years to six years under the statutory concealment exception. *Id.*; *Caputo v. Pfizer, Inc.*, 267 F.3d 181, 189 (2d Cir. 2001) ("the 'fraud or concealment' provision does not 'toll' the otherwise applicable six-or three-year statute of limitations established in § 413(1) or (2); rather, it prescribes a separate statute of limitations of six years from the date of discovery").

Finally, Mr. Cooper has not plausibly alleged fraud. A plaintiff may qualify under the statutory concealment exception "by showing either that the defendant took affirmative steps to prevent the plaintiff's discovery of his claim or injury or that the wrong itself was of such a nature as to be self-concealing." *Caputo*, 267 F.3d at 190 n.3 (citing and quoting *State of New*

*York v. Hendrickson Bros., Inc.*, 840 F.2d 1065, 1083 (2d Cir. 1988)). Mr. Cooper's breach of fiduciary duty claim is based on not receiving from IBM the data required to calculate the Foreign Service Offset to be applied to his pension valuation within thirty days of his request for the data. Amd. Compl. at 2. But he had requested this data at least by September 25, 2020, *see e.g.*, Amended Complaint ECF No. 33 at ¶¶ 34 (describing communications between IBM and Mr. Cooper about the required Foreign Service Offset data) ("Despite IBM US's many representations to Plaintiff, in writing, that IBM US would qualify and quantify this FSO, to date, Defendant has not provided Plaintiff with any such information, despite Plaintiff's many previous requests and Defendant's most recent written commitment to do so on September 25, 2020.").

In other words, Mr. Cooper would have been aware by October 25, 2020, that IBM had not given him the data he requested within the thirty-day timeline, and Mr. Cooper thus would have been aware of the violation. Put yet another way, Mr. Cooper knew since October 25, 2020 that IBM failed to provide the data underlying his breach of fiduciary duty claim, regardless of whether (or how) IBM prevented him from having the data, making inapplicable the concealment exception. *See Osberg v. Foot Locker, Inc.*, 862 F.3d 198, 210–11 (2d Cir. 2017) ("[A]pplication of the concealment exception requires that 'in addition to alleging a breach of fiduciary duty (be it fraud or any other act or omission), the plaintiff ... also allege that the defendant committed either: (1) a 'self-concealing act'—an act committed during the course of the breach that has the effect of concealing the breach from the plaintiff; or (2) 'active concealment'—an act distinct from and subsequent to the breach intended to conceal it.'") (quoting *Caputo*, 267 F.3d at 189); *Perlman v. Gen. Elec.*, No. 22 CIV. 9823 (PAE), 2023 WL 4304929, at *8 (S.D.N.Y. June 30, 2023) (finding that a breach of fiduciary duty claim did not

13

fall within the statutory concealment exception when the Complaint did not allege some "affirmative misstatement or act that concealed the employer's breach of ERISA, or a later act designed to conceal that breach").

Accordingly, all of Mr. Cooper's ERISA claims are time-barred, and will be dismissed.

### 2. ERISA Exhaustion Requirement

In any event, a plaintiff must exhaust their administrative remedies before filing suit over an ERISA claim. *Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 571 U.S. 99, 105 (2013) ("[P]articipants [are required to] exhaust internal review before bringing a claim for judicial review under § 502(a)(1)(B)" so "[a] participant's cause of action under ERISA accordingly does not accrue until the plan issues a final denial." ) (citations omitted); *Paese v. Hartford Life & Acc. Ins. Co.*, 449 F.3d 435, 443 (2d Cir. 2006) ("[T]he federal courts—including this Circuit—have recognized a firmly established federal policy favoring exhaustion of administrative remedies in ERISA cases.") (citation and internal quotation marks omitted); *Kennedy v. Empire Blue Cross & Blue Shield*, 989 F.2d 588, 594 (2d Cir. 1993) ("This Court has recognized 'the firmly established federal policy favoring exhaustion of administrative remedies in ERISA cases.'") (quoting *Alfarone v. Bernie Wolff Const. Corp.*, 788 F.2d 76, 79 (2d Cir. 1986)), *cert. denied*, 479 U.S. 915 (1986). The exhaustion requirement also requires the exhaustion of administrative appeals. *Kennedy*, 989 F.2d at 594. ("[E]xhaustion in the context of ERISA requires those administrative appeals provided for in the relevant plan or policy.").

Mr. Cooper's ERISA Plan's Summary Plan Description includes an explanation of the process that one must undergo to appeal a denial of benefits. *See* ECF No. 1-1 at 83 ("If your claim is denied in whole or in part, you (or your authorized representative) have the right to

14

submit a written appeal to the IBM Plan Administrator for a full and fair review of the denied claim.").

While in his original complaint, Mr. Cooper included a generic allegation that he had exhausted his administrative remedies, Connecticut Superior Court Complaint, ECF No. 1-1 at 3, ¶ 60, his Amended Complaint contains no such allegation. And he cannot cure his inadequate pleading by arguing, in his response to Defendant's motion to dismiss, that the discovery process will reveal the requisite exhaustion. *See Neurological Surgery, P.C. v. Aetna Health, Inc.*, 511 F. Supp. 3d 267, 293 (E.D.N.Y. Jan. 4, 2021) ("The failure to exhaust administrative remedies before filing an action in federal court requires [an] ERISA cause of action to be dismissed."); *Murphy Med. Assocs., LLC v. Cigna Health & Life Ins. Co.*, No. 3:20CV1675(JBA), 2022 WL 743088, at *8 (D. Conn. Mar. 11, 2022) ("[C]ourts have nevertheless dismissed [ERISA] claims where plaintiffs fail to plead, or baldly plead, that they have exhausted their administrative remedies[.]"); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").[2]

Accordingly, Mr. Cooper's ERISA claims also fail for lack of exhaustion of administrative remedies and can be dismissed on that basis as well.

### B. Count Two: GDPR Claim

"Under the Data Protection Act and EU General Data Protection Regulations 2018 . . . every European Union citizen has a right to privacy." *d'Amico Dry d.a.c. v. Nikka Fin., Inc.*, No. CV 18-0284-KD-MU, 2018 WL 5116094, at *2 (S.D. Ala. Oct. 19, 2018).

---

[2] In his response to IBM's motion to dismiss, Mr. Cooper states that discovery will demonstrate that he did "seek" administrative remedies. Response ¶ 3. Just because Mr. Cooper sought administrative remedies, however, does not mean that he exhausted his administrative remedies. Mr. Cooper's Amended Complaint contains no such information about exhaustion and even with an exhaustion of administrative remedies, Mr. Cooper's claims are time-barred. *See supra*.

IBM argues that Mr. Cooper's GDPR claim does not apply to this case because neither party is a European Union citizen. Mot. at 16

Mr. Cooper argues in response that he is a U.K. citizen and was an EU citizen at the time of the pension request. Response ¶ 8.

The Court agrees with IBM.

While Mr. Cooper may be a United Kingdom citizen, the United Kingdom left the European Union January 31, 2020, and is no longer a part of the European Union. *See Aquavit Pharmacueticals, Inc. v. U-Bio Med, Inc.*, No. 19CV3351VECRWL, 2021 WL 4312579, at *18 (S.D.N.Y. July 16, 2021) ("The U.K. left the E.U. on January 31, 2020") (citing U.K. Parliament House of Commons Library, *Brexit Timeline*, https://commonslibrary.parliament.uk/research-briefings/cbp-7960). Because this is a case between two non-European Union parties and no allegations have been made that either party is currently a European Union citizen, the GDPR does not apply. *See e.g., Smith v. Sox*, No. 2:23-CV-68-JES-NPM, 2023 WL 4157362, at *3 (M.D. Fla. June 23, 2023) ("Since there is no allegation that either party is a European Union citizen, the Court finds that the GDPR does not afford protections in this case.).

Accordingly, the Court will grant IBM's motion to dismiss Mr. Cooper's GDPR claim.

### C. Leave to Amend

Under Federal Rule of Civil Procedure 15(a),

> [a] party may amend its pleading once as a matter of course no later than: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court

should freely give leave when justice so requires." *Id.* The district court has broad discretion to decide a motion to amend. *See Local 802, Assoc. Musicians of Greater N.Y. v. Parker Meridien Hotel*, 145 F.3d 85, 89 (2d Cir. 1998).

Reasons for denying leave to amend include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment[.]" *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) (noting that leave to amend may be denied when amendment is "unlikely to be productive," such as when an amendment is "futile" and "could not withstand a motion to dismiss [under] Fed. R. Civ. P. 12(b)(6)"). "[A] motion for leave to amend a complaint may be denied when amendment would be futile." *Tocker v. Phillip Morris Cos., Inc.*, 470 F.3d 481, 491 (2d Cir. 2006) (citing *Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003)); *see also Kim v. Kimm*, 884 F.3d 98, 105–06 ("Therefore, because the proposed amendments would have no impact on the basis for the district court's dismissal and would consequently be futile, the district court did not abuse its discretion in denying [the plaintiff] leave to amend." (citing *Ellis*, 336 F.3d at 127)).

Mr. Cooper has already amended his Complaint once as a matter of course. *See* Amd. Compl.; Fed. R. Civ. P. 15(a)(1) ("A party may amend its pleading once as a matter of course. . ."). While it is in a court's discretion to grant further leave to amend, Fed. R. Civ. P. 15(a)(2) ("In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave."), a court can also deny leave to amend when it is "unlikely to be productive" such as when an amendment is "futile" and "could not withstand a motion to dismiss [under] Fed. R. Civ. P. 12(b)(6)," *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d

Cir. 2002).

Here, because any amendments would not cure the fact that Mr. Cooper's ERISA claims are time-barred, he failed to exhaust his ERISA administrative remedies, and his claim under the GDPR are inapplicable to non-European Union citizen parties, the Court will not grant leave to amend, and Mr. Cooper's Amended Complaint is dismissed with prejudice.

## IV.   CONCLUSION

For the foregoing reasons, IBM's motion to dismiss is **GRANTED**, and this case is **dismissed with prejudice.**

Because Mr. Cooper's Amended Complaint is dismissed, Mr. Cooper's motion for summary judgment is **DENIED AS MOOT**.

The Clerk of Court is respectfully directed to close this case.

**SO ORDERED** at New Haven, Connecticut, this 6th day of December, 2024.

                                        /s/ Victor A. Bolden  
                                        VICTOR A. BOLDEN  
                                        UNITED STATES DISTRICT JUDGE