UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SIMON J. COOPER,<br>    *Plaintiff*,<br><br>       v.<br><br>INTERNATIONAL BUSINESS MACHINES<br>CORPORATION,<br>    *Defendant*. | No. 3:24-cv-656 (VAB) |

**RULING ON MOTION FOR RECONSIDERATION**

On June 3, 2024, Simon J. Cooper ("Mr. Cooper" or "Plaintiff") filed a *pro se* Complaint against International Business Machines Corporation ("IBM," "IBM U.S.," or "Defendant") under the Employee Retirement Income Security Act of 1974 ("ERISA") for wrongful denial of benefits, penalties, and a breach of fiduciary duties (Count I), and under the European Union General Data Protection Regulations ("GDPR") for breach of privacy (Count II). Amended Complaint, ECF No. 33 (June 3, 2024) ("Amd. Compl.").

On June 17, 2024, IBM filed a motion to dismiss all counts of Mr. Cooper's Amended Complaint. Mot. to Dismiss the Amd. Compl., ECF No. 36.

On December 6, 2024, the Court granted IBM's motion to dismiss all counts of Mr. Cooper's Amended Complaint. Order, ECF No. 50.

On December 13, 2024, Mr. Cooper filed a motion for reconsideration of the Court's Order dismissing his Complaint. Mot. for Reconsideration, ECF No. 51 ("Mot.")

For the following reasons, Mr. Cooper's motion for reconsideration is **DENIED**.

I.      STANDARD OF REVIEW

Rule 7(c) of the Local Civil Rules of the United States District Court for the District of Connecticut allows for the filing of motions "for reconsideration." D. Conn. L. Civ. R. 7(c). The Second Circuit has held that "[m]otions for reconsideration under [the District of Connecticut's Local Civil Rules] ... are as a practical matter the same thing as motions for amendment of judgment under Fed. R. Civ. P. 59(e)—each seeks to reopen a district court's decision on the theory that the court made mistaken findings in the first instance." *City of Hartford v. Chase*, 942 F.2d 130, 133 (2d Cir. 1991). In general, three grounds justify reconsideration: "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Virgin Atlantic Airways, Ltd. v. National Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (quotation omitted).

"A motion for reconsideration is committed to the sound discretion of the court." *Kregos v. Latest Line, Inc.*, 951 F. Supp. 24, 26 (D. Conn. 1996). "The standard for granting [a motion for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transportation, Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). "Such motions must be narrowly construed and strictly applied in order to discourage litigants from making repetitive arguments on issues that have been thoroughly considered by the court." *Range Road Music, Inc. v. Music Sales Corp.*, 90 F. Supp. 2d 390, 391–92 (S.D.N.Y. 2000).

As a result, "[a] motion for reconsideration may not be used to plug gaps in an original argument[,] to argue in the alternative once a decision has been made," *SPGGC, Inc. v. Blumenthal*, 408 F. Supp. 2d 87, 91 (D. Conn. 2006) (quotation omitted), "to relitigate old

matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n. 5 (2008) (quotation omitted).

## II. DISCUSSION

Mr. Cooper seeks reconsideration of the Court's Order dismissing his Complaint on three grounds: (1) the Court overlooked IBM's alleged failure to calculate a U.S. Only Calculation ("USO Calculation") that is separate from the Foreign Service Offset ("FSO"); (2) the Court failed to toll the statute of limitations on bringing ERISA claims during the pendency of administrative proceedings; and (3) the Court erred in concluding that the GDPR is inapplicable to his claims.

The Court addresses each argument in turn.

### A. Tolling of ERISA Statute of Limitations Due to Fraud

ERISA enumerates a statute of limitations for breach of fiduciary duty claims as "three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation," 29 U.S.C. § 1113(2), with a "statutory concealment exception": "that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation." 29 U.S.C. § 1113.

Mr. Cooper argues that the Court's Order dismissing Mr. Cooper's Complaint should be reconsidered because in its ERISA analysis, the Court failed to consider that IBM allegedly committed fraud by failing to provide a USO Calculation of his benefits when they stated they would do so, thus "validat[ing] that IBM conspired to delay, deny and defend payment and as such fraudulently failed to execute its administrative responsibilities, moving the [ERISA] timeline within the 3 year statute of limitations of fiduciary responsibility and well within the 6 year fraud statute." Mot. at 1–2.

3

The Court disagrees.

First, in the Court's Order dismissing Mr. Cooper's Complaint, the Court found that since IBM was required to provide requested ERISA plan documents within thirty days of a request,[1] and Mr. Cooper requested the FSO data at least by September 25, 2020, Mr. Cooper would have been aware of a potential claim by October 25, 2020, however he failed to file a lawsuit until March 14, 2024, meaning that "any claim for a breach of fiduciary duty is past the three year statute of limitations period." *See* Order, ECF No. 50 at 11.

The same is true with respect to the USO Calculation. In his Amended Complaint, Mr. Cooper mentions that "[d]espite multiple requests [IBM] has not made [the USO] valuation," Amd. Compl. ¶ 33, and in the September 25, 2020 letter in "response to [Mr. Cooper's] request

---

[1] This requirement is enumerated in the ERISA statute and restated in IBM's ERISA Summary Plan Description. *Compare* 29 U.S.C. § 1024(b)(2) ("The administrator shall make copies of the latest updated summary plan description and the latest annual report and the bargaining agreement, trust agreement, contract, or other instruments under which the plan was established or is operated available for examination by any plan participant or beneficiary in the principal office of the administrator and in such other places as may be necessary to make available all pertinent information to all participants (including such places as the Secretary may prescribe by regulations)."), *with* 29 U.S.C. § 1132(1) ("Any administrator . . . who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper."); State Action Documents, ECF No. 1-1 at 81 (incorporated by reference in Mr. Cooper's Amended Complaint, ECF No. 33) ("Under ERISA, there are steps you can take to enforce the above rights. For instance, if you request a copy of plan documents or the latest annual report from the Plan and do not receive them within 30 days, you may file suit in federal court."); *see also McDonald v. Pension Plan of NYSA-ILA Pension Tr. Fund*, 320 F.3d 151, 163 (2d Cir. 2003) ("Upon request, a plan administrator must furnish a copy of the latest updated summary plan description and other instruments under which the plan is established or operated. . . . In an October 21, 1998 letter, [plaintiff's] counsel asked for an updated [summary plan document], and the [defendants] had 30 days in which to deliver it." (citations and quotation marks omitted)).

4

for additional information regarding the calculation of [his] benefit under the IBM U.S. Personal Pension Plan," IBM mentions that they have "requested an estimate of your pension under the 'U.S. service only benefit' and will send you the details of that calculation upon receipt from the Plan's actuary." State Action Documents, ECF No. 1-1 at 97 (incorporated by reference in Mr. Cooper's Amended Complaint, ECF No. 33). As a result, just like the FSO, Mr. Cooper had requested the USO Calculation since at least the date of the September 25, 2020 letter, and Mr. Cooper would have been aware of the potential claim arising from no production of the USO Calculation in thirty days by October 25, 2020, meaning that, by filing this lawsuit on March 14, 2024, over three years later, *see* Petition for Removal, ECF No. 1 ¶ 1 ("On or about, March 14, 2024, an action was commenced against Defendant in the Superior Court for the District of Danbury at Danbury, in the State of Connecticut."), the three-year statute of limitations period had already lapsed.

Second, as with the FSO data, because Mr. Cooper knew of the alleged violation of not providing the USO Calculation since October 25, 2020, the concealment exception extending the statute of limitations for breach of fiduciary duty exception to six years would be inapplicable, as the alleged breach was not "concealed" in any way. *See* Order, ECF No. 50 at 12–13 (citing *Osberg v. Foot Locker, Inc.*, 862 F.3d 198, 210–11 (2d Cir. 2017) ("[A]pplication of the concealment exception requires that 'in addition to alleging a breach of fiduciary duty (be it fraud or any other act or omission), the plaintiff ... [must] also allege that the defendant committed either: (1) a "self-concealing act"—an act committed during the course of the breach that has the effect of concealing the breach from the plaintiff; or (2) "active concealment"—an act distinct from and subsequent to the breach intended to conceal it.'" (quoting *Caputo*, 267 F.3d at 189)); *Perlman v. Gen. Elec.*, No. 22 CIV. 9823 (PAE), 2023 WL 4304929, at *8

(S.D.N.Y. June 30, 2023) (finding that a breach of fiduciary duty claim did not fall within the statutory concealment exception when the Complaint did not allege some "affirmative misstatement or act that concealed the employer's breach of ERISA, or a later act designed to conceal that breach")).

Therefore, even if the USO Calculation had been considered, the Court would have reached the same conclusion: that Mr. Cooper's claims are time-barred.

### B. Tolling During Administrative Proceedings

A plaintiff must exhaust their administrative remedies before filing suit over an ERISA claim. *Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 571 U.S. 99, 105 (2013) ("[P]articipants [are required to] exhaust internal review before bringing a claim for judicial review under § 502(a)(1)(B)" so "[a] participant's cause of action under ERISA accordingly does not accrue until the plan issues a final denial.") (citations omitted); *Paese v. Hartford Life & Acc. Ins. Co.*, 449 F.3d 435, 443 (2d Cir. 2006) ("[T]he federal courts—including this Circuit—have recognized a firmly established federal policy favoring exhaustion of administrative remedies in ERISA cases.") (citation and internal quotation marks omitted); *Kennedy v. Empire Blue Cross & Blue Shield*, 989 F.2d 588, 594 (2d Cir. 1993) ("This Court has recognized 'the firmly established federal policy favoring exhaustion of administrative remedies in ERISA cases.'") (quoting *Alfarone v. Bernie Wolff Const. Corp.*, 788 F.2d 76, 79 (2d Cir. 1986)), *cert. denied*, 479 U.S. 915 (1986). The exhaustion requirement also requires the exhaustion of administrative appeals. *Kennedy*, 989 F.2d at 594. ("[E]xhaustion in the context of ERISA requires those administrative appeals provided for in the relevant plan or policy.").

Mr. Cooper argues that the Court's Order dismissing Mr. Cooper's Complaint should be reconsidered because "the court did not include the timeline to complete administrative remedies

6

per the [Summary Plan Description]" and since "[o]ver a year after IBM had not completed its pension valuation . . . [Mr. Cooper] was still trying to complete the administrative remedy . . . [i]t [would be] double jeopardy to not toll the clock until after the administrative process has completed." Mot. at 2.

    The Court disagrees.

    In its original decision, the Court knew of Mr. Cooper's claim that he sought administrative remedies. *See* Order, ECF No. 50 at 15 n.2 ("In his response to IBM's motion to dismiss, Mr. Cooper states that discovery will demonstrate that he did 'seek'" administrative remedies."). Mr. Cooper raises administrative remedies here in his motion for reconsideration, just as he did in his response to the motion to dismiss, despite his Amended Complaint containing no such allegation. *See generally* Amd. Compl. Without pleading exhaustion of administrative remedies in his Amended Complaint, his ERISA claims would fail because they are also time-barred. *See* Order, ECF No. 50 at 15 ("[Mr. Cooper] cannot cure his inadequate pleading by arguing, in his response to Defendant's motion to dismiss, that the discovery process will reveal the requisite exhaustion." (citing *Neurological Surgery, P.C. v. Aetna Health, Inc.*, 511 F. Supp. 3d 267, 293 (E.D.N.Y. Jan. 4, 2021) ("The failure to exhaust administrative remedies before filing an action in federal court requires [an] ERISA cause of action to be dismissed."); *Murphy Med. Assocs., LLC v. Cigna Health & Life Ins. Co.*, No. 3:20CV1675(JBA), 2022 WL 743088, at *8 (D. Conn. Mar. 11, 2022) ("[C]ourts have nevertheless dismissed [ERISA] claims where plaintiffs fail to plead, or baldly plead, that they have exhausted their administrative remedies[.]"))).

    Moreover, in its original decision, the Court noted that equitable tolling in ERISA cases is highly disfavored, and because Mr. Cooper was aware of the alleged violations for years, there

7

was no basis for equitable tolling. *See* Order, ECF No. 50 at 11–12 ("Other forms of equitable tolling of ERISA claims appear highly disfavored." (citing *Brown v. Owens Corning Inv. Review Comm.*, 622 F.3d 564, 575 (6th Cir.2010) ("We have found only one case where this court has equitably tolled ERISA's statute of limitations.")); *cf. Carey v. Int'l Bhd. of Elec. Workers Local 363 Pension Plan*, 201 F.3d 44, 47 (2d Cir.1999) (explaining that the ERISA statute of limitations provisions requires "strict adherence"). And, even when equitable tolling is allowed, it is only appropriate when the "plaintiff is prevented from filing despite exercising that level of diligence which could reasonably be expected in the circumstances." *Veltri v. Bldg. Serv. 32B-J Pension Fund*, 393 F.3d 318, 322 (2d Cir. 2004). There is no such allegation in this case—as mentioned above Mr. Cooper has been aware of the alleged violation since at least October 25, 2020, and was not prevented from filing suit then.

Accordingly, because Mr. Cooper's argument about tolling and seeking administrative remedies was already considered in this Court's original decision, reconsideration on these grounds would be inappropriate. *See Shrader*, 70 F.3d at 257 ("The standard for granting [a motion for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.").

### C. The GDPR Claim

"Courts in the United States often have occasion to apply and enforce foreign law." *Giannopoulos v. Iberia Lineas Aereas de Espana, S.A.*, 17 F. Supp. 3d 743, 746 (N.D. Ill. 2014) (citing various cases including *Boosey & Hawkes Music Publishers, Ltd. v. Walt Disney Co.*, 145 F.3d 481, 492 (2d Cir.1998) (directing district courts to apply foreign law because it is warranted

8

under *forum non conveniens*)), *aff'd sub nom. Baumeister v. Deutsche Lufthansa, AG*, 811 F.3d 963 (7th Cir. 2016).

Where a legislative body enacting a foreign law has prohibited enforcement by foreign courts or enforcement outside of the borders of the country where the law was created, however, this nation's courts will follow those legislature's instructions and refuse to enforce that law. *See Giannopoulos*, 17 F. Supp. 3d at 746 ("Nevertheless, for the Court to have the power to enforce EU 261, and for Plaintiffs to have a cause of action in the United States under EU 261, the legislative body that enacted the regulation—the European Commission—must have granted U.S. courts the power to enforce EU 261, or at least the European Commission must not have prohibited U.S. courts from doing so."); *cf., e.g.*, *McKesson Corp. v. Islamic Republic of Iran*, 672 F.3d 1066, 1075 (D.C. Cir. 2012) ("Having established that this Court has jurisdiction over McKesson's claim, we must now decide which body of law, if any, provides McKesson with a private right of action against Iran . . . ."); *id.* at 1078–1080 (examining the text of an Iranian law to find that a private right of action was created to allow the filing of a suit in U.S. Courts under Iranian law).

Mr. Cooper argues that since "the GDPR EU provisions were codified in UK Law . . . [and t]he Data Protection Act 2018 . . . currently supplements and tailors the GDPR within the UK . . . the basis for the court decision is in error, and the [GDPR] claim should stand." Mot. at 2.

The Court disagrees.

Mr. Cooper is correct that the GDPR has been incorporated and supplemented though the U.K. Data Protection Act 2018 ("DPA"). *See* Data Protection Act 2018 c. 12 §§ 4–28 (Eng.) (incorporating the U.K. GDPR). But the DPA explicitly restricts court enforcement to

9

enforcement "(a) in England and Wales, by the High Court or the county court, (b) in Northern Ireland, by the High Court or a county court, and (c) in Scotland, by the Court of Session or the sheriff." Data Protection Act 2018 c. 12 § 180 (Eng.). Thus, as a federal court sitting in Connecticut, this Court would not have the power to enforce Mr. Cooper's rights under the UK DPA or GDPR, and thus would have to dismiss Mr. Cooper's GDPR claims. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Lydonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 700–01 (2d Cir. 2000) ("If subject matter jurisdiction is lacking, the action must be dismissed.").

Thus, even if the Mr. Cooper's claims under the UK DPA had been considered, the Court would have reached the same conclusion: that Mr. Cooper's GDPR claims have to be dismissed.

Accordingly, because the Court has already considered the arguments that Mr. Cooper has raised in his motion for reconsideration or found that in considering Mr. Cooper's arguments the Court would not have changed its decision, Mr. Cooper's motion for reconsideration is denied. *See Shrader*, 70 F.3d at 257 ("The standard for granting [a motion for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."); *see also United States v. Wright*, No. 3:21-CR-8 (VAB), 2025 WL 654050, at *5 (D. Conn. Feb. 28, 2025) ("Accordingly, Mr. Wright has failed to 'point to controlling decisions or data that the court overlooked ... that might reasonably be expected to alter the conclusion reached by the court.' *Shrader*, 70 F.3d at 257, and his motion for reconsideration is denied.").

## IV.    CONCLUSION

For the foregoing reasons, Mr. Cooper's motion for reconsideration is **DENIED**.

**SO ORDERED** at New Haven, Connecticut, this 2nd day of May, 2025.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE